Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for Andrew Rubin and*
*Canal View Holdings LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-101-ELG |
| | ) | |
| 819D LLC | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | ) | |
| Andrew Rubin and Canal View Holdings LLC | ) ) ) | |
| | ) | Adversary Case No. 23-10009-ELG |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Bryan Ross, in his official capacity as chapter 7 trustee of the chapter 7 estate of 819D LLC | ) ) ) ) ) | |
| Defendant, | ) | |

**COMPLAINT FOR DECLARATORY RELIEF**

Come now Andrew Rubin ("Mr. Rubin") and Canal View Holdings LLC ("Canal View") (collectively, the "Plaintiffs"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil Procedure 3, and as and for their complaint (the "Complaint") against Bryan Ross, in his official capacity as trustee of the Chapter 7 estate of

1

819D LLC (the "Trustee," with 819D LLC being known as "819D" or the "Debtor"), state as follows:

### Introduction

1. This Complaint stems from Karl Garcia ("Mr. Garcia") propagating frivolous allegations that Mr. Rubin and Canal View entered into one or more fraudulent conveyance, under governing law.

2. Mr. Garcia has endeavored to advance these scurrilous assertions through litigation, with the subject proceedings ultimately removed to this Honorable Court when 819D sought relief pursuant to Section 301 of Title 11 of the United States Code.

3. The Trustee, now charged with the helm and administration of 819D's bankruptcy estate, owns and controls any claims that Mr. Rubin and/or Canal View caused the Debtor to fraudulently convey monies, or that they benefited from any such conveyances, pursuant to the allowances of Section 544(b) of Title 11 of the United States Code.

4. Through certain actions and inactions, the Trustee has demonstrated that he believes Mr. Garcia's claims to be meritorious and, equally, that he believes Mr. Rubin and Canal View to have engaged in one or more fraudulent conveyances under Virginia law.

5. These contentions are objectively errant, as a matter of law, inasmuch as (i) Mr. Rubin and Canal View are not subject to the personal jurisdiction of the state courts of the Commonwealth of Virginia and, as such, may not be properly sued for violating the Virginia statutes governing fraudulent conveyances; (ii) 819D was not insolvent at any time relevant and, as such, legally could not have engaged in a fraudulent conveyance; (iii) there is no evidence that 819D was on notice of Mr. Garcia's claims at the time the at-issue monetary transactions occurred; and (iv) Mr. Garcia's claims are premised upon alleged property defects that (a) were properly

2

disclosed; (b) that are not actual defects (and, in one case, that are conditions mandated by controlling law); and/or (c) are *de minimis* in nature.

6.     This Complaint is accordingly brought to affirmatively establish the lack of any obligation whatsoever, on the part of the Plaintiffs, to the Trustee.

## Parties

7.     Mr. Rubin is a natural person who is a citizen of the State of Maryland by virtue of his ongoing domicile therein.

8.     Canal View is a District of Columbia limited liability company with its principal place of business being in Anne Arundel County, Maryland.

9.     The Trustee is the duly-appointed Chapter 7 trustee of the Debtor's estate.

## Jurisdiction and Venue

10.    This Honorable Court enjoys jurisdiction over the instant dispute pursuant to the allowances of Section 1334 of Title 28 of the United States Code, as the claims set forth herein are related to a case under Title 11 of the United States Code.

11.    Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1409 of Title 28 of the United States Code, as this matter relates to a case under Title 11 of the United State Code that was commenced in the United States Bankruptcy Court for the District of Columbia.

## General Allegations: Property Purchase and Litigious Inclinations

12.    On April 18, 2017, Mr. Garcia contracted to purchase the real property commonly known as 819 D Street, NE, Unit #34, Washington, DC 20002 (the "Property") from the Debtor, in exchange for a purchase price of $1,525,000.00 (the "Purchase Price").

13. The Debtor's sale of the Property to Mr. Garcia was pursuant to an agreement (the "Sale Agreement") that expressly provided, *inter alia*:

> **THE UNIT IS SOLD IN AS-IS CONDITION AND THE SELLER MAKES NO OTHER WARRANTIES OR UNDERTAKINGS OTHER THAN AS SET FORTH IN THE LIMITED WARRANTY, WHICH SHALL BE INCORPORATED BY REFERENCE INTO THIS AGREEMENT.**

Sale Agreement at § 5 (bold and capitalization in original).

14. The Sale Agreement also included a so-called "integration clause," expressly providing:

> THIS IS THE COMPLETE AGREEMENT BETWEEN THE PARTIES. OTHER THAN ANY ORAL AGREEMENT THAT HAS NOW BEEN MEMORIALIZED IN WRITING IN SECTION 7 HEREOF, THERE ARE NO ORAL OR OTHER WRITTEN AGREEMENTS, REPRESENTATIONS, CONDITIONS, PROMISES, OR UNDERSTANDINGS DIRECTLY OR INDIRECTLY CONNECTED WITH THIS AGREEMENT. PURCHAESR HEREBY WAIVES AND RELEASES SELLER, ITS PARTNERS, AFFILIATES, AGENTS, EMPLOYEES, CONTRACTORS AND EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, INCLUDING, WITHOUT LIMITATION, ANY CONDOMINIUM ASSOCIATION OR OTHER GOVERNING BODY FORMED IN CONNECTION WITH THE CONDOMINIUM, FROM ANY AND ALL CLAIMS, LOSSES, DAMAGES, EXPENSES, COSTS CAUSE OF ACTION OR OTHER LIABILITIES WHETHER KNOWN OR UNKNOWN, MATURED OR UNMATURED, ABSOLUTE OR CONTINGENT, ARISING OUT OF OR RELATING IN ANY WAY WHATSOEVER TO ANY SUCH ORAL OR OTHER WRITTEN AGREEMENT, REPRESENTATIONS, CONDITIONS, PROMISES, OR UNDERSTANDINGS.
>
> THIS IS A LEGALLY BINDING CONTRACT. PLEASE MAKE SURE THAT ALL PROVISIONS ARE READ AND UNDERSTOOD BEFORE SIGNING. LEGAL OR OTHER COMPETENT ADVICE SHOULD BE SOUGHT IF ANY PART IS NOT UNDERSTOOD.

Sale Agreement at § 7 (capitalization in original).

15. Mr. Garcia is, and at all times relevant was, an attorney licensed to practice law in the State of California and the District of Columbia; he had the capacity to both read and understand the Sale Agreement before executing the document and before proceeding to consummate his acquisition of the Property.

16. To be sure, Mr. Garcia is not merely someone who once attended law school; he is an attorney intimately familiar with real estate matters, subsequently working with a homeowners' association, in his capacity as an attorney, to explore issues related to easements favoring the Property.

17. Prior to closing on his acquisition of the Property, Mr. Garcia was given an opportunity to inspect the premises both individually and through his utilization of retained professionals.

18. Thereafter, Lou Scerbo inspected the Property on behalf of Sentry Home Inspections, LLC, at the request of Mr. Garcia, and furnished to Mr. Garcia a 98 page inspection report (the "Inspection Report").

19. Following his receipt of the Inspection Report, Mr. Garcia presented 819D with a so-called punch list (the "Punch List"), asking for various alterations to be made to the Property.

20. Before and after closing, 819D proceeded to furnish each alteration set forth in the Punch List, without material incident or issue.

21. Mr. Garcia closed on his acquisition of the Property on or about April 28, 2017, taking title thereto.

22. Following closing, Mr. Garcia was delighted with the Property, issuing the following quote for utilization by the local media:

> What drew me to this space is that it is art. I love the idea of raising my family in a bell tower and living within a 120 year old church on Capitol Hill. What the Rubin Group did is beyond imagination and the stuff of fairy tales. Their execution remained true to their vision and can be seen from the most intimate of detailing to the overall concept of the building. I feel really blessed to live here!

23. Mr. Garcia, however, soon proved discontent with the Property; whereas he had contracted to acquire the penthouse unit in a restored historically protected 119-year-old church, it seems he desired, instead, to have the amenities and features typical of a brand new construction

project, and found himself putatively dismayed with some of the elements of the original church, including the elements legally mandated to be present under operative historic preservation laws.

24. Once Mr. Garcia set out to use his legal skills to vexatiously shakedown 819D and its various members, he sent an e-mail to the Property's homeowners' association (the "HOA") board reading, *inter alia*:

> I also think we need to create new email addresses for board communications. We should also direct all resident inquiries / comments to these addresses as well. I'd hate for some idiot to have the access to and comb through our personal emails in case of future litigation (this is the lawyer in me talking).

E-mail of June 5, 2017.

25. At least one member of the HOA board pleaded with Mr. Garcia to allow the HOA to work with 819D to address any issues related to common areas within the Property, as opposed to following Mr. Garcia's strategy of immediately pursuing heavy-handed litigation:

> [M]y biggest concern is your flawed strategy. Preparing for a personal lawsuit against the developer that combines the attic (a common area element), your unit warranty issues, and your unresolved punch list items, has been in clear conflict with the Board taking steps to remediate the contamination in the attic... I also want to add that any legal proceedings will take years and I don't believe there's any basis for a case.

E-mail of March 1, 2018.

26. Mr. Garcia proceeded to make clear that he intended to pursue litigation and, if the actual facts were not sufficient to support his lawsuit, he would simply make up facts that could support his lawsuit, with an HOA board member writing to Mr. Garcia, on March 9, 2018, "I won't respond to all your false statements, but you are the one acting unilaterally and in your self-interest."

6

**General Allegations: Mr. Garcia's Claims**

27. On or about March 18, 2020, Mr. Garcia filed suit, in the Superior Court for the District of Columbia, against 819D LLC, Mr. Rubin, and Michelle Tygier alleging a number of construction defects including some that were directly contradicted by the Contract.

28. The Court quickly dismissed the suit against Mr. Rubin and Michelle Tygier and ordered the dispute to binding arbitration, as specified in the aforementioned Contract that Mr. Garcia reviewed and executed.

29. Recognizing that arbitration would quickly expose the futility of his claims and foreclose any opportunity to pursue his personal vendetta against Mr. Rubin and Michelle Tygier, on or about October 30, 2020, Mr. Garcia filed suit, in the Circuit Court for Fairfax County, Virginia, against Mr. Rubin, Canal View, and myriad other defendants (the "State Court Litigation").

30. Despite Mr. Garcia's repeated contrary assertions, the State Court Litigation (now pending in this Honorable Court by way of removal) is directly derivative to his suit filed against 819D in District of Columbia Superior Court.

31. Through a convoluted and possibly unconstitutional argument, Mr. Garcia has attempted to put the cart before the horse and collect his alleged damages before any of his actual claims are tested and the amount of actual damages is determined (something he has actively attempted to impeding).

32. As the State Court Litigation progressed, Mr. Garcia's various claims quickly grew imperiled, with their frivolity being revealed by some combination of the motions practice of defendants and the discovery process.

33. Thusly, Mr. Garcia soon began utilizing a strategy to avoid various dispositive hearings, amending his pleading multiple times adding more unrelated and innocent defendants, more outlandish claims, and claims of damages spiraling ever higher.

34. The operative pleading, at the time of 819D seeking bankruptcy relief, was the Third Amended Complaint (the "TAC").

35. Much of the TAC is fixated on alleged monetary conveyances, which Mr. Garcia asserts to have been fraudulent in nature. *See* TAC at ¶¶ 49-178.

36. Mr. Garcia seeks damages from Mr. Rubin in the amount of $6,106,544.60 and seeks damages from Canal View in an identical sum.

37. Stunningly, Mr. Garcia now seeks Forty-One Million Two Hundred Twenty-One Thousand Five Hundred Sixty-One Dollars and change (~$41,221,561) in damages from the defendants identified in the TAC, which is over nine (9) times the damages he alleged in his original suit and over twenty seven (27) times as much as the original purchase price for Mr. Garcia's condominium.

38. In seeking these damages, however, Mr. Garcia overlooked several key, objective facts that render his claims non-colorable as a matter of law.

39. The first major issue with Mr. Garcia's claim (which, as noted *infra*, have now been adopted by the Trustee), is that prior to the final relevant monetary distributions from 819D, 819D had:

   a. Posted a letter of credit with the District of Columbia Department of Housing and Community Development, in the amount of $356,016.13, with that letter of credit being fully secured by a deposit of cash held at EagleBank;

    b. Signed a contract with Potomac Construction Group, LLC (which was the general contractor on the at-issue project), which provided for warranty obligations in accord with those fixed by law in the District of Columbia;

    c. Required Potomac Construction Group, LLC to post a performance bond in the amount of $4,633,165.80, *in addition to* the warranty it was obligated to provide;

    d. Required Potomac Construction Group, LLC to name 819D as an additional insured on a general liability policy in the amount of $2,000,000.00;

    e. Purchased an *additional* insurance policy, with commercial property and general liability coverage, from Harford Mutual Insurance Companies, providing up to $2,000,000.00 in coverage should an issue arise after the sale of the Property (and the other units in the same building); and

    f. Held back cash, as an additional reserve, with the amount in reserve being not less than $265,906.02 at all times relevant.

40. Stated otherwise, 819D believed it had over $9.25m available, at the time of its final distribution and all times relevant, to tend to any issues related to the sale of the Property; this is a number more than six times what Mr. Garcia paid for the Property.

41. The second major issue is that Mr. Garcia (and, by extension, the Trustee) is fixated on myriad monetary transfers occurring prior to the end of 2017, but ignores that it was not until March 24, 2018 that Mr. Garcia gave notice of any alleged issued beyond the Punch List, which makes it nearly impossible for any transaction to have been undertaken with any intent to hinder, delay or defraud Mr. Garcia.

42. Further, Mr. Garcia brought his claims in a Virginia state court, under Virginia law, but ignores that neither Mr. Rubin nor Canal View fall within the ambit of Virginia's fraudulent

9

conveyance laws (though they certainly would be subject to the fraudulent conveyance laws of the District of Columbia or Maryland).

43. And, of course, there is the general problem that Mr. Garcia's substantive complains about the Property are almost uniformly devoid of merit: a highly educated buyer – comfortable practicing real estate law – contracted to buy a condominium unit, executed an agreement with an integration clause, had the Property inspected, was able to tour the premises himself, and gave a gleeful quote to the media; and now clearly wishes that instead he had purchased as glittering new condo in Miami (which he has now purchased and claims that the estate of 819D LLC is obligated to purchase for him). Buyer's remorse is most certainly not grounds upon which to maintain a civil action.

### General Allegations: The Trustee's Posture

44. The Trustee, since inuring to the benefit of any fraudulent avoidance claims held by creditors of the Debtor, has elected to advance the allegations of Mr. Rubin and Canal View engaging in fraudulent conveyances.

45. For more than four months, the Trustee has been at the helm of 819D's bankruptcy estate, and in that time he has had occasion – through counsel – to confer with representatives of the various implicated parties.

46. Yet the Trustee has persisted in asserting the claims against Mr. Rubin and Canal View to have merit.

47. Mr. Rubin and Canal View, by contrast, have strongly insisted they have not undertaken any conduct that would give rise to a claim of a fraudulent (or otherwise avoidable) conveyance.

48.     The Trustee's continued inaction, refusing to acknowledge the claims against Mr. Rubin and Canal View to be devoid of merit, has caused a Damoclean sword to continue to swing mightily over the head of a local business and an individual who is an integral part of the Washington, DC real estate community.

49.     Thusly, Mr. Rubin and Canal View now bring this counterclaim, seeking a declaration that they have not acted in an unlawful or civilly actionable manner, with hopes that their good names may be promptly restored.

**Count I – Declaratory Judgment**

50.     The Counterclaimants incorporate by reference each and every foregoing paragraph of this Counterclaim, as though fully set forth herein.

51.     The Trustee has asserted the Counterclaimants to be liable to Mr. Garcia and, by operation of applicable bankruptcy law, to the Trustee, for multiple fraudulent – or otherwise-avoidable – conveyances.

52.     The Counterclaimants believe they have not engaged in any fraudulent or avoidable conveyances and, to the contrary, that the claims now owned by the Trustee amount to little more than a brute force vexatious shakedown of an individual and a company targeted for their economic resources.

WHEREFORE, pursuant to the allowances of Section 2201 of Title 28 of the United States Code, the Counterclaimants respectfully pray this Honorable Court (i) declare the Counterclaimants to have not engaged in any fraudulent or avoidable transfers, in connection with the Property, inasmuch as 819D has held – or been entitled to access – resources sufficient to answer any warranty claim of Mr. Garcia at all times relevant; (ii) declare the Counterclaimants are not subject to the personal jurisdiction of the Commonwealth of Virginia and, as such, not

subject to the long arm of Virginia's fraudulent conveyance laws; (iii) declare 819D to have not been insolvent at any time relevant; (iv) declare 819D to have not been on notice of Mr. Garcia's claims – aside from those set forth in the Punch List – until March 24, 2018; (v) declare Mr. Garcia's warranty and other property-centric claims to not merit recourse in any sum greater than that which he paid for the Property; and (vi) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 3, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone/Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Andrew Rubin and
Canal View Holdings LLC*